# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 585 | **DATE** | 2/13/2002 |
| **CASE TITLE** | USA vs. Jerome P. Genova, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Genova's motion for a judgment of acquittal on Counts Five and Six, racketeering acts 1(b), 3(b), 4(b) and 18(a) and for a new trial is granted in part and denied in part. Defendant Gulotta's motion for a judgment of acquittal and/or for a new trial is denied in its entirety. Defendant Stack's motion for a judgment of acquittal notwithstanding the verdict is granted in part and denied in part. Defendant Jerome J. Stack is hereby acquitted on Counts Five and Six. Defendant Stack's motion for a new trial is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | FEB 14 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 166 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| RO | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 00 CR 585 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| JEROME P. GENOVA, LAWRENCE P. | ) | |
| GULOTTA, and JEROME J. STACK, | ) | |
| | ) | |
| Defendants. | ) | |



DOCKETED

FEB 1 4 2002

## MEMORANDUM OPINION AND ORDER

On August 27, 2001, at the conclusion of a three week trial, a jury returned a verdict against Defendants Jerome Genova and Jerome Stack on a six count indictment charging them with racketeering, mail fraud and theft of fund offenses. Specifically, Genova, the former Mayor of Calumet City, was convicted of racketeering (Count One), mail fraud (Count Four) and theft of funds (Counts Five and Six). Stack, the former Commissioner of Public Works of Calumet City, was convicted of racketeering (Count One) and theft of funds (Counts Five and Six). Also, on October 22, 2001, this Court issued an opinion in which it found Lawrence Gulotta, the former City Prosecutor of Calumet City, guilty of racketeering (Count One), mail fraud (Counts Two, Three and Four) and theft of funds (Counts Five and Six). Defendants have each filed motions for a judgment of acquittal and/or for a new trial and have adopted the arguments of their co-defendants. The Government filed a consolidated response to all of the motions. For the following reasons, Defendant Genova's motion for a judgment of acquittal on Counts Five and Six, racketeering acts 1(b), 3(b), 4(b) and 18(a) and for a new trial is granted in part and denied in part, (R. 145), Defendant Gulotta's motion for a judgment of acquittal and/or for a new trial is

denied in its entirety, (R. 146), Defendant Stack's motion for a judgment of acquittal

notwithstanding the verdict is granted in part and denied in part, (R. 147), and Stack's motion for

a new trial is denied, (R. 148).

## RELEVANT FACTS

We will assume familiarity with the facts of this case based on the evidence presented at

trial and this Court's opinion in *United States v. Genova*, 167 F. Supp. 2d 1021 (N.D. Ill. 2001).

Moreover, given the multiple defendants and charged offenses in this case, we will address the

relevant facts for each defendant as part of our analysis of that defendant's arguments.

## LEGAL STANDARDS

The legal standards that apply to the instant motions are well-established. In determining

whether a judgment of acquittal is appropriate, the Seventh Circuit explained that:

> "[T]he test that the court must use is whether at the time of the motion there was relevant
> evidence from which the jury could reasonably find [the defendant] guilty beyond a
> reasonable doubt, viewing the evidence in the light most favorable to the government . . .
> bear[ing] in mind that 'it is the exclusive function of the jury to determine the credibility
> of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.'"

*United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989) (quoting *United States v. Marquardt*,

786 F.2d 771, 780 (7th Cir. 1986)). The Court may grant a motion for acquittal "only when the

relevant evidence is sufficient to prove all the elements of the charged offence." *United States v.*

*Beck*, 615 F.2d 441, 448 (7th Cir. 1980). The evidence adduced at trial is sufficient if "any

rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt,

viewing the evidence and every reasonable inference in the light most favorable to the

prosecution." *United States v. Colonia*, 870 F.2d 1319, 1326 (7th Cir. 1989) (citation omitted).

Simply put, the Court can overturn the verdict "[o]nly when the record contains no evidence,

regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Moore*, 764 F.2d 476, 478 (7th Cir. 1985) (citation omitted).

Similarly, the circumstances under which the Court may grant a new trial are limited. The evidence adduced at trial must weigh so heavily against the verdicts that the Court "believes there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted . . . ." *United States v. Morales*, 902 F.2d 604, 606 (7th Cir. 1990). The Court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable . . . ." *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (quotation omitted). Although the decision to grant or deny a new trial is within the discretion of the trial court and will not be disturbed on appeal unless there has been an error as a matter of law or a clear and manifest abuse of discretion, "[m]otions for new trial based on weight of the evidence are not favored." *Id.* Consequently, we are "to grant them sparingly and with caution, doing so only in those really 'exceptional cases.'" *Id.*

## ANALYSIS

The post-trial motions submitted for this Court's review by Defendants Genova, Gulotta and Stack ask us to vacate and set aside the guilty verdicts rendered by the jury and by this Court, and to enter a judgment of acquittal and/or to order a new trial. We now proceed to address each of the defendant's arguments in turn.

## I. Genova's Motion for a Judgment of Acquittal and for a New Trial

On August 27, 2001, the jury returned a verdict finding Defendant Genova guilty of racketeering, as charged in Count One of the Indictment. In particular, the jury's itemized verdict found that Genova had committed the following racketeering acts: 1(a) (mail fraud – 1994

attorney fees); 1(b) (official misconduct – 1994 attorney fees); 1(b)(1) (statement of economic interest); 1(c) (bribery (d) – 1994 attorney fees); 2(c) (bribery (d) – 1995 attorney fees); 3(b) (official misconduct – 1996 attorney fees); 3(b)(1) (statement of economic interest); 3(c) (bribery (d) – 1996 attorney fees); 4(a) (mail fraud – 1997 attorney fees); 4(b) (official misconduct – 1997 attorney fees); 4(b)(1) (statement of economic interest); 4(c) (bribery (d) – 1997 attorney fees). Thus, the jury found that Genova's receipt of attorney's fees in each of the charged years violated Illinois official misconduct and bribery laws and federal mail fraud laws. Moreover, the jury convicted Genova of racketeering act 18(a), which charged the state crime of intimidation. With respect to the separate mail fraud charges, Defendant Genova was convicted of Count Four, which related to his March 26, 1998 statement of economic interest. Genova was acquitted, however, of Counts Two and Three, which related to his 1996 and 1997 statements of economic interest, respectively. Finally, Genova was also convicted of the two theft of funds charges alleged in Counts Five and Six.

In his motion for a judgment of acquittal and for a new trial, Genova makes the following arguments: (1) this Court should enter a judgment of acquittal as to racketeering acts 1(b), 3(b) and 4(b) because a violation of the Illinois official misconduct statute cannot serve as a RICO predicate act where, as here, Genova's conduct – failing to disclose a source of income on his statements of economic interest – would not constitute the requisite act of bribery under either Illinois or federal law; (2) he is entitled to a judgment of acquittal as to racketeering act 18(a) because intimidation cannot be a RICO predicate act where, as here, the jury specifically acquitted Genova of extortion; (3) he is entitled to a new trial because the Court's instruction to the jury that official misconduct is a form of bribery was erroneous as a matter of law; (4) he is

entitled to a judgment of acquittal on Counts Five and Six of the Indictment because the Government failed to prove beyond a reasonable doubt that Genova stole, obtained by fraud or otherwise converted Calumet City funds having a value of at least $5,000 for the years 1996 and 1997; and (5) this Court should order a new trial because there is a reasonable possibility that the introduction of a dictionary definition of the term "bribe" into the jury's deliberations had a prejudicial impact on Genova.

In its consolidated response, the Government argues that: (1) Genova is not entitled to acquittal on racketeering acts 1(b), 3(b) and 4(b) because the charged violations of the Illinois official misconduct statute fall well within the ambit of the Seventh Circuit's definition of generic bribery as a RICO predicate act in *United States v. Garner*, 837 F.2d 1404, 1417-19 (7th Cir. 1987); (2) Genova's argument challenging the sufficiency of the evidence on the intimidation count must fail because it cannot be said that no reasonable jury could have convicted Genova of racketeering act 18(a); (3) the clear language of *Garner* belies Genova's assertion that Government Supplemental Instruction 30a was an incorrect statement of the law; (4) Genova was properly convicted of Counts Five and Six – converting government monies in violation of 18 U.S.C. § 666 – because both finders of fact concluded that the entire business relationship between Defendant Gulotta's law firm, Genova and Calumet City was corrupt; and (5) an objective view of the entire trial and the nature of the verdicts compel a finding that the introduction of the dictionary definition of "bribe" did not prejudice Genova, and therefore his motion for a new trial should be denied.

## A. Racketeering Acts 1(b), 3(b) and 4(b)

The Indictment charged in racketeering acts 1(b), 3(b) and 4(b) that Genova's financial

relationship with Gulotta constituted a RICO predicate act[1] because it violated the Illinois official

misconduct statute, which provides that:

> A public officer or employee commits misconduct when, in his official capacity,
> he commits any of the following acts: . . . (c) With intent to obtain a personal
> advantage for himself or another, he performs an act in excess of his lawful
> authority[.]

720 ILCS 5/33-3(c). More specifically, the Indictment charged that Genova violated § 33-3(c)

by:

> perform[ing] acts in his official capacity as Mayor and in excess of his lawful
> authority, namely: (1) filing a Statement of Economic Interest signed by defendant
> Genova, falsely declaring that defendant Genova had not served in any advisor
> capacity for any professional organization from which in excess of $1,200 was
> received by defendant Genova during the preceding calendar year and that
> defendant Genova had not rendered professional services to the Law Firm from
> which defendant Genova had received fees in excess of $5,000 during the
> preceding calendar year, in violation of 5 ILCS 420/4A-101 and 107[.]

*See* Indictment Count One (Sub-Acts 1(b)(1), 3(b)(1) and 4(b)(1)). The Indictment further

charged that Genova violated § 33-3(c) by taking and maintaining a prohibited interest in a

contract in violation of § 3 of the Public Officer Prohibited Activities Act, 50 ILCS 105/3. *See*

*id.* (Sub-Acts 1(b)(2), 3(b)(2) and 4(b)(2)). The jury, however, found that Genova committed only

Sub-Acts 1(b)(1), 3(b)(1) and 4(b)(1).

Genova argues that his conduct – failing to disclose his financial relationship with

Gulotta on statements of economic interest he filed in 1995, 1997 and 1998 – is an insufficient

---

[1] "Racketeering Activity" – also referred to as "predicate acts" – is defined as:
> any act or threat involving murder, kidnapping, gambling, arson, robbery, *bribery,
> extortion,* dealing in obscene matter, or dealing in a controlled substance or listed
> chemical . . . which is chargeable under State law and punishable by
> imprisonment for more than one year.

18 U.S.C. § 1961(1)(a) (emphasis added).

basis for the Illinois official misconduct statute to serve as a RICO predicate act. Specifically, Genova maintains that his purported violation of § 33-3(c), unlike a violation of § 33-3(d),[2] cannot be characterized as bribery pursuant to § 1961(1)(a) because the filing of false statements – even with the intent to obtain a personal advantage – is not the same as accepting a bribe. Therefore, Genova contends that he should be acquitted of racketeering acts 1(b), 3(b) and 4(b).

The Seventh Circuit stated that "Congress intended for 'bribery' to be defined generically when it included bribery as a [RICO] predicate act . . . [t]hus, any statute that proscribes conduct which could be generically defined as bribery can be the basis for a predicate act." *United States v. Garner*, 837 F.2d 1404, 1418 (7th Cir. 1987). The *Garner* Court held that the illegal receipt of gratuities in violation of § 33-3(d) of the Illinois official misconduct statute was such an act of generic bribery.[3] *Id.* (citing *United States v. Forsythe*, 560 F.2d 1127, 1137 (3rd Cir. 1977)

---

[2] Section 33-3(d) provides that:
> A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts: . . . (d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law.
720 ILCS 5/33-3(d).

[3] Based on the Seventh Circuit's holding in *Garner*, we reject Genova and Stack's argument that Government Supplemental Instruction 30a – "Official Misconduct is a separate form of bribery under Illinois law" – was an incorrect statement of the law. Our instruction to the jury did not misstate the law and did not prejudice Defendants. *See Wilson v. Williams*, 83 F.3d 870, 874 (7th Cir. 1996) (articulating the standard of review of jury instructions). Moreover, Instruction 30a is not inconsistent with our current holding that Genova's violations of § 33-3(c) do not constitute RICO predicate acts because, when this jury instruction is considered along with the more than sixty other Government and Defendant Instructions, we are not convinced that the "the jury was misled and its understanding of the issues was seriously compromised" by Instruction 30a such that we must order a new trial. *See Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 264 (7th Cir. 1996). In fact, the jury's partial acquittals conclusively support this finding. Similarly, we reject Stack's other jury instruction arguments because the Court's instructions to the jury as to the RICO counts and the knowledge requirement were correct statements of the law and did not have a prejudicial impact on Stack.

(interpreting Pennsylvania law for the proposition that bribery includes "an assault on the integrity of a public office or an official action").

In this case, as opposed to *Garner* and as opposed to our conviction of Defendant Gulotta in *Genova*, 167 F. Supp. 2d at 1039-41, we are confronted with violations of § 33-3(c) – *not* § 33-3(d)* – that involve merely the filing of false statements. These filings do not in themselves constitute bribery for purposes of RICO. This Court is certainly aware that Congress intended for RICO to be read broadly, *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985), but we conclude in this limited case that Genova's filing of false statements – even if done with the intent of concealing a bribery scheme – is not the same conduct as the receipt of an illegal gratuity, *see Garner*, 837 F.2d at 1418-19 and *United States v. Kotvas*, 941 F.2d 1141, 1146 (11th Cir. 1991), the systematic payments of bribes to public officials, *see Forsythe*, 560 F.2d at 1137-38, or the acceptance of a bribe in furtherance of an attorney fees kickback scheme, *see Genova*, 167 F. Supp. 2d at 1039-41.[4] The latter cases clearly involved acts of bribery, whereas Genova's conduct solely involved acts committed to conceal bribery. Therefore, we enter a judgment of acquittal as to racketeering acts 1(b), 3(b) and 4(b) because Genova's violation of the Illinois official misconduct statute § 33-3(c) in failing to disclose a source of income on his statements of economic interest does not constitute the requisite act of bribery under either Illinois or federal law and, as such, cannot serve as a RICO predicate act.

---

[4] We emphasize, however, that Genova's conduct with regard to the bribery charges in Count One (racketeering acts 1(c), 2(c), 3(c) and 4(c)) clearly constitutes a RICO predicate act. Similarly, we hold that Defendant Stack's conduct with regard to the official misconduct charges in Count One (racketeering acts 9(a), 10(a), 12(a) and 13(a)) – "authorizing and providing city funds to [Calumet City employees] in return and exchange for [their] political work on behalf of [D]efendant Genova" – resembles a generic form of bribery under *Garner*, 837 F.2d at 1419, and supports a RICO predicate act.

## B. Racketeering Act 18(a)

The Indictment charged and the jury found that Genova committed racketeering act 18(a) by illegally intimidating James Sutherland in violation of the Illinois intimidation statute, which provides that:

> when, with intent to cause another to perform . . . any act . . . [a person] communicates to another . . . a threat . . . without lawful authority . . . [to] [t]ake action as a public official against anyone . . ."

720 ILCS 5/12-6(a)(6). More specifically, the Indictment charged that Genova committed intimidation in that he:

> with the intent to cause [Sutherland] to perform an act, that is, to fire [Marchese], communicated via a telephone conversation with [Sutherland] a threat to take action against anyone or anything as a public official without lawful authority, that is, arbitrarily threatening to take action against [Sutherland] and his business by prohibiting Calumet City police officers from providing off-duty, private security services to the store unless [Sutherland] fired [Marchese], in violation of the U.S. Const., Fourteenth Amendment, Equal Protection Clause.

*See* Indictment Count One (Sub-Act 18(a)). The jury, however, acquitted Genova of the extortion charge in racketeering act 18(b).[5]

Genova's argument, similar to his claim as to the official misconduct charges in racketeering acts 1(b), 3(b) and 4(b), is that intimidation by itself – without involving any of the enumerated offenses listed in § 1961(1)(a), *see supra* note 1 – cannot serve as a RICO predicate act. Moreover, Genova maintains that extortion can no longer support the viability of

---

[5] On August 17, 2001, this Court denied in open court Genova's motion for a judgment of acquittal as to racketeering act 18. (R. 117.) At that time, we defined "property" broadly under the Hobbs Act line of cases to include "interference with the right of an owner to conduct his business the way he or she would want to." (*Id.*, Tr. at 6; *See, e.g., United States v. Lewis*, 797 F.2d 358, 364 (7th Cir. 1986).) Currently, we are faced with an entirely different situation because the jury specifically acquitted Genova of extortion and, therefore, intimidation is all that remains of racketeering act 18 to support a RICO predicate act.

intimidation as a predicate act because the jury specifically acquitted Genova of extortion.

The case law is sparse as to whether a violation of the Illinois intimidation statute constitutes the racketeering act of extortion.[6] In *Hartman v. Board of Trustees of Community College District No. 508*, No. 90 C 5281, 1991 WL 24519 (N.D. Ill. Feb. 20, 1991), the court rejected the Government's contention that the Illinois intimidation statute was a RICO predicate act where the plaintiff failed to establish that the defendant intimidated her to obtain property. *Id.* at *6. *See also McKinney v. State of Ill.*, 720 F. Supp. 706, 708 (N.D. Ill. 1989) (intimidation not a racketeering act). *But see Jones v. Ada S. McKinley Cmty. Servs.*, 1989 WL 105231, at *4 (N.D. Ill. Sept. 1, 1989) (allowing plaintiff's claims based on the Illinois intimidation statute and the Hobbs Act to stand on a motion to dismiss); *Buck Creek Coal Inc., v. United Workers of Am.*, 917 F. Supp. 601, 612 (S.D. Ind. 1995) (stating in dicta that although the alleged violation of the Indiana intimidation law "would seem to qualify" as a RICO predicate act, the allegation was preempted by federal labor law).

In this case, as in *Hartman*, we are faced with a violation of the Illinois intimidation statute without an attempt to obtain "property," however broadly defined. Thus, similar to our ruling as to racketeering acts 1(b), 3(b) and 4(b), we find that Genova's violation of the Illinois intimidation statute does not alone – without the taking of property and after his acquittal on extortion as charged in racketeering act 18(b) – constitute a RICO predicate act. Hence, we enter a judgment of acquittal as to racketeering act 18(a).

---

[6] The Seventh Circuit indicated that extortion, as used in § 1961(1)(a), should be understood in terms of extortion as used in the federal criminal code. *Sutherland v. O'Malley*, 882 F.2d 1196, 1202 (7th Cir. 1989). Section 1951(b)(2) defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

## C. Counts Five and Six

In Counts Five and Six, the Indictment charged and the jury convicted Genova of violating 18 U.S.C. § 666 for "steal[ing], and obtain[ing] by fraud, and . . . knowingly convert[ing]" Calumet City funds in the amount of at least $5,000 in 1996 and 1997, respectively. More specifically, the Indictment charged that Genova:

> did steal, and obtain by fraud, and otherwise without authority, knowingly convert
> . . . and intentionally misapply property, namely city funds in the form of
> monetary compensation, legal fees and comp days, such funds being owned by
> and under the care, custody, and control of Calumet City and having a value of at
> least $5,000[.]

*See* Indictment Counts Five and Six. The jury also found that Genova aided and abetted the other defendants in this conduct.

Genova argues that he is entitled to a judgment of acquittal as to Counts Five and Six because the Government failed to prove the allegations beyond a reasonable doubt. In particular, Genova claims that the legal fees that Calumet City paid to Defendant Gulotta were fees paid for services rendered and that Genova received no legal fees from Calumet City. Moreover, Genova contends that the Government: (1) offered no proof that Genova was aware that comp time was improperly given to Calumet City employees in 1996 and 1997; and (2) failed to prove that Calumet City suffered a loss of at least $5,000 in either 1996 or 1997 as a result of the awarding of comp time because the evidence failed to establish beyond a reasonable doubt that any of the employees who received comp time ever actually used that comp time.

In the *Genova* opinion, this Court found that the Government presented "overwhelming" evidence that Gulotta engaged in an illegal attorney fees kickback scheme with Genova in order to secure the Calumet City legal business. *See Genova*, 167 F. Supp. 2d at 1045. The jury

11

similarly convicted Genova of engaging in the same illegal attorney fees kickback scheme. Thus, both finders-of-fact concluded that the entire business relationship between Genova, Gulotta's law firm and Calumet City was corrupt.

When examining the evidence in the light most favorable to the Government, this Court cannot say that Genova did not "steal, obtain by fraud, or otherwise knowingly convert" Calumet City monies paid to Gulotta's law firm in the form of legal fees, one-third of which was kicked-back to Genova as the *quid pro quo* for the corrupt relationship.[7] Furthermore, this Court finds that a jury could reasonably have concluded that Genova aided and abetted this fraud, theft and conversion of Calumet City legal fees paid to Gulotta's law firm, particularly since one-third of those fees were kicked-back to Genova. Based on this reasoning alone, we conclude that the minimum jurisdictional amount of $5,000 for both Counts Five (1996) and Six (1997) was established, and we deny Genova's motion for a judgment of acquittal on these counts.[8]

---

[7] Genova's attempt to distinguish *United States v. Ferrara*, 990 F. Supp. 146 (E.D.N.Y. 1998), is unavailing. The only minor difference between the language of the bribery and theft subsections of § 666 is the addition of the word "property" in the theft subsection. *See* 18 U.S.C. § 666(a)(2) (bribery) and § 666(a)(1) (theft). We reiterate herein our finding in *Genova*, 167 F. Supp. 2d at 1043, that "[o]ur focus is on the individuals who controlled the dollars in the illegal attorney fees kickback scheme, Genova and Gulotta, not on the financial well-being of Calumet City itself," and that "Genova and Gulotta stole and 'obtain[ed] by fraud' *property* owned by Calumet City and its citizens and valued at $5,000 or more, in that Genova deceived Calumet City and its citizens by hiring Gulotta, a corrupt and conflicted counsel, in order to foster their illegal attorney fees kickback scheme." *Id.* (emphasis added). *See also Ferrara*, 990 F. Supp. at 151; *United States v. Westmoreland*, 841 F.2d 572, 577 (5th Cir. 1988) (holding that "[i]t is sufficient that Congress seeks to preserve the integrity of federal funds by assuring the integrity of the organizations or agencies that receive them").

[8] Given our conclusion that Genova and Gulotta's illegal attorney fees kickback scheme *on its own* satisfies the minimum jurisdictional amount of § 666, there is no need for us to address Genova's arguments regarding the comp time and city pay that was improperly given to Calumet City employees in 1996 and 1997. In Defendant Stack's case, however, the amount of comp time and city pay that was improperly given to Calumet City employees in 1996 and 1997

## D. Dictionary Definition of "Bribe"

On Friday, August 24, 2001, the jury asked this Court to provide a dictionary definition of bribery. After consulting with counsel for both parties and learning that there was some objection to further defining the term bribery, the Court instructed the jury to refer to the bribery definitions contained in Government Instructions 33 (pertaining to Defendant Genova)[9] and 31 (pertaining to Defendant Stack).[10] On Monday, August 27, 2001, the jury foreman displayed the following dictionary definition of bribe to the jury:

> Bribe: anything bestowed, with a view to influence judgment and conduct; v.t. to practice bribery.

*New Webster's Dictionary and Thesaurus* 57 (1992).

Genova was charged in racketeering acts 1(c), 2(c), 3(c) and 4(c) with bribery in violation of 720 ILCS 5/33-1(d), which alleged that during the 1994-97 calendar years he committed bribery by receiving unauthorized payments form Gulotta's law firm for causing Calumet City to contract with Gulotta's firm for legal services. Stack was charged in racketeering acts 9(b),

---

is a critical issue in determining Stack's liability under Counts Five and Six. *See infra* Part III.

[9] Government Instruction 31 provides that:
A person commits bribery in violation of 720 ILCS 5/33-1(a), when with intent to influence the performance of any act related to the employment or function of any public officer or public employee, he promises, tenders, or causes to be tendered, any property or personal advantage which he is not by law authorized to accept.

[10] Government Instruction 33 provides that:
A person commits bribery in violation of 720 ILCS 5/33-1(d), when he receives, retains, or agrees to accept any property or personal advantage which he is not authorized by law to accept, knowing that such property or personal advantage was promised or tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer or public employee.

13

10(b), 12(b) and 13(b) with bribing Paul Kowalchyk, Nick Yovkovich, Tom Maszinski and Anthony Perry, respectively, by providing them with comp time and other benefits to do political work for Genova, in violation of 720 ILCS 5/33-1(a).

Genova and Stack argue that an objective assessment of the facts demonstrates that there is a reasonable possibility that the introduction of the extraneous dictionary definition of a bribe had a prejudicial effect on the jury's verdict. More specifically, they maintain that the dictionary definition substantively differed from the requirements of the Illinois bribery statute under which they were charged. Therefore, Genova and Stack claim that this Court should order a new trial for them.

Although it is certainly true that a defendant has "a right to be tried on the basis of the evidence admitted at his trial, and this right may be violated if the jury gets access to extra-record evidence . . . even if that access is not the result of any professional misconduct," *United States v. Paneras*, 222 F.3d 406, 411 (7th Cir. 2000) (quotation omitted), a new trial "is not automatically required whenever a jury is exposed to material not properly in evidence." *United States v. Sababu*, 891 F.2d 1308, 1333 (7th Cir. 1989). Accordingly, once it is determined that the jury has been subject to extraneous information, this Court must make an "objective assessment" of whether there is a "reasonable possibility" that the jury's decision was prejudiced by the outside influence, or whether it was harmless. *See United States v. Bruscino*, 687 F.2d 938, 940-41 (7th Cir. 1982). The Seventh Circuit emphasized that in making this "objective determination," this Court can rely on its "familiarity with the proceedings when deciding whether the verdict was affected by outside information," *United States v. Sander*, 962 F.2d 660, 668 (7th Cir. 1992), and that this determination is a "fact-driven exercise that will depend on the circumstances of the

case."[11] *Id.*

Among the considerations taken into account by this Court in determining whether there is a "reasonable possibility" that the extraneous dictionary definition of bribe prejudiced Genova and Stack are: (1) our observation of the jurors' attentiveness during the trial; (2) whether they took notes; (3) whether they appeared to listen closely to the evidence; and (4) whether they demonstrated careful consideration in reaching their verdicts by, for example, taking time during their deliberations and considering the evidence as to each count and each defendant.[12] *See, e.g., United States v. Allen*, 736 F. Supp. 914, 922 (N.D. Ill. 1990). Furthermore, in this case the Court conducted post-verdict, on the record, interviews with various jurors to determine the extent of any prejudice as part of its independent investigation of the alleged juror error. In addition, where there is "overwhelming evidence" of the defendant's guilt, the Seventh Circuit has found that the introduction of extraneous materials is harmless and does not prejudice the defendants. *See, e.g., Paneras*, 222 F.3d at 411-12.

We find that, considering all of the objective factors outlined above, there is no "reasonable possibility" that Genova and Stack suffered any prejudice by the introduction of the

---

[11] Stack's reliance on *United States v. Martinez*, 14 F.3d 543 (11th Cir. 1994), and *Marino v. Vasquez*, 812 F.2d 499 (9th Cir. 1987), is misplaced. As the Seventh Circuit instructed, this Court must rely on its "familiarity with the proceedings" in *United States v. Genova* in making our prejudice versus harmless determination. *See Sanders*, 962 F.2d at 668. Thus, we emphasize that the circumstances of the instant case differ significantly from the facts of *Martinez* and *Marino*, in that the only allegations of juror error in *Genova* involved a single reference to a dictionary definition.

[12] Two factors that this Court cannot consider are any *post hoc* juror statements about the deliberative process, *see* Fed. R. Evid. 606(b), or the date and time of the signing of the jury's verdict form, *see* Fed. R. Crim. P. 31. Therefore, any juror statements as to whether the extraneous dictionary definition of bribe did or did not carry much weight and any arguments regarding the date written on Stack's verdict form are irrelevant.

extraneous dictionary definition of bribe to the jury. Based on this Court's familiarity with the proceedings and circumstances of this case, we note that the jury was fully attentive during the trial and paid close attention to the evidence, and that nearly all of the jurors took copious notes. In addition, the fact that the jury reached mixed verdicts on numerous sub-predicate acts and counts of the Indictment as to each defendant after several days of deliberation demonstrates that the jury carefully considered all of the evidence. Finally, and most importantly, although the dictionary definition of bribe differed slightly from the expanded definition of bribery given in the jury instructions, we note that both definitions dealt with influencing Genova and Stack's conduct. Therefore, we conclude – given this Court's observation of all the circumstances of this case – that the extraneous dictionary definition did not prejudice Defendants, and we deny Genova and Stack's motions for new trials on this issue.[13]

## II. Gulotta's Motion for a Judgment of Acquittal and for a New Trial

On October 22, 2001, this Court issued an opinion in which we found Defendant Gulotta guilty on Counts One, Two, Three, Four, Five and Six of the Indictment. *See Genova*, 167 F. Supp. 2d at 1021. Specifically, this Court stated that "the government's evidence *overwhelmingly established* the charged attorney fees kickback scheme beyond a reasonable doubt." *Id.* at 1045 (emphasis added). Therefore, this Court concluded that Genova and Gulotta's attorney fees kickback scheme repeatedly violated the federal racketeering act and mail

---

[13] Significantly, this Court concluded that the evidence was "overwhelming" that Genova and Gulotta engaged in an illegal attorney fees kickback scheme. *See Genova*, 167 F. Supp. 2d at 1045. The jury's view of some of the evidence was distinct, as shown by their split verdicts. However, this Court's objective assessment of its own post-verdict, on the record, interviews with various jurors discloses that the jury's deliberations were not unduly influenced by the unfortunate use of the extraneous dictionary definition.

fraud statute and the Illinois official misconduct and bribery statutes, and constituted a theft by deception of Calumet City municipal funds from the federal government.

In his motion for a judgment of acquittal and for a new trial, Gulotta argues that the evidence did not establish his guilt with respect to Count One of the Indictment charging violations of RICO. Gulotta also contends that the evidence was insufficient to convict him of Counts Two, Three and Four charging the filing of false statements of economic interest, because he did not commit or participate in the commission of those acts, nor did he agree or reasonably foresee that Genova would file false statements of economic interest or would cause these statements to be mailed, rather than delivered. Finally, Gulotta claims that the evidence was insufficient to convict him of Counts Five, Six and Seven because he did not steal, defraud or misapply any property belonging to Calumet City.

In its consolidated response, the Government argues that: (1) Gulotta's attacks on the RICO charge in Count One are meritless as this Court has already found beyond a reasonable doubt that the evidence of Gulotta's guilt was "overwhelming"; (2) Gulotta is not entitled to a judgment of acquittal with respect to Counts Two, Three and Four because the mailings of Genova's statements of economic interest were clearly foreseeable to Gulotta and it is manifest that he knowingly aided and abetted Genova's commission of mail fraud notwithstanding the fact that he did not directly participate in the actual mailing of the statements; and (3) Gulotta was properly convicted of converting government monies in violation of 18 U.S.C. § 666 as this Court concluded that the Government presented "overwhelming"evidence that Gulotta engaged in an illegal attorney fees kickback scheme with Genova in order to secure the Calumet City legal

business.[14]

## A. Count One

In this Court's *Genova* opinion, we found that:

> In the specific attorney fees kickback scheme established by the Government, Gulotta's and Genova's repeated respective payment and receipt of bribery funds for non-existent legal work constituted appropriate racketeering acts on multiple levels. . . . Both Genova and Gulotta knowingly conducted and participated in the conduct of the affairs of Calumet City through a pattern of illegal activities which included repeated violations of the mail fraud and Illinois Bribery and Official Misconduct Statutes throughout a three-year period. Throughout these repeated racketeering acts, Calumet City was used as an enterprise by Genova and Gulotta to conduct illegal activities.

*Genova*, 167 F. Supp. 2d at 1041. Moreover, we concluded "that the government's evidence overwhelmingly established the charged attorney fees kickback scheme beyond a reasonable doubt and that Gulotta has been proven guilty of all the crimes pending against him in the indictment." *Id.* at 1045.

Gulotta argues in his motion for a judgment of acquittal that the evidence was insufficient to convict him of Count One of the Indictment. Specifically, Gulotta claims that the record did not establish: (1) a "pattern" of RICO activity; (2) the existence of a RICO "enterprise"; (3) that Gulotta participated in the "operation or management" of the RICO enterprise (*i.e.* Calumet City); (4) that Gulotta agreed false statements of economic interest would be filed on behalf of the attorney fees kickback scheme; (5) a violation of Municipal Code § 2-22; (6) that Genova did not perform substantial legal work on behalf of Calumet City; and (7) that official misconduct as

---

[14] Gulotta's argument – challenging the sufficiency of the evidence against him in Counts Five and Six – is, as stated above in our analysis of Genova's challenge as to the same counts, thoroughly unpersuasive. *See supra* Part I(C). Therefore, we deny Gulotta's motion for a judgment of acquittal on Counts Five and Six.

charged in the Indictment constitutes a predicate act for RICO purposes.[15]

To prove a RICO violation, the Government needs to establish that Gulotta engaged in "(1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *United States v. Torres*, 191 F.3d 799, 805 (7th Cir. 1999) (quotation omitted). RICO defines a "pattern of

---

[15] Briefly, we may dispense with several of Gulotta's RICO arguments. First, Gulotta's argument that he did not participate in any manner – directly or indirectly – in causing the preparation of, or the delivery of, the statements of economic interests, is misguided. *United States v. Swan*, 250 F.3d 495 (7th Cir. 2001), which Gulotta himself filed as a supplemental case law authority, states that the defendant "did not have to mail the check himself to be guilty of mail fraud. He only needed to cause it to be mailed or to commit some act that would cause the mailing of the check to be reasonably foreseeable." *Id.* at 500 (citing *United States v. Keane*, 522 F.2d 534, 551 (7th Cir. 1975)). In this case, the mailing of Genova's statements of economic interest "was quite reasonably foreseeable to Gulotta." *Genova*, 167 F. Supp. 2d at 1039. Moreover, it is manifest that Gulotta knowingly aided Genova's commission of mail fraud under 18 U.S.C. § 2, notwithstanding the fact that he did not participate in mailing Genova's statements. As such, we reject Gulotta's claim with regard to both the racketeering acts charged in Count One and the mail fraud scheme charged in Counts Two, Three and Four. Accordingly, we deny Gulotta's motion for a judgment of acquittal on Counts Two, Three and Four.

Second, Gulotta presents insufficient evidence to challenge our conclusion that "[b]oth Genova and Gulotta had clear conflicts of interest . . . created by their secret and illegal economic partnership," in violation of Calumet City Municipal Code § 2-22. *Id.* at 1040. Third, this Court's findings of fact specifically stated that "[n]umerous attorney opponents, actual clients and employees of the [Gulotta] Law Firm testified by stipulation that they were never aware of any legal work performed by Genova for the Law Firm. This abundant testimony supports the conclusion that Genova's arrangement with Gulotta and the Law Firm was a complete sham." *Id.* at 1029-35 (Findings of Fact 20-58). Against this enormous weight of evidence, Gulotta relies on the testimony of Ronald Kawanna, an employee of Gulotta's law firm, whom this Court concluded "knowingly and willfully gave false material testimony during the trial," *id.* at 1031-32 (Findings of Fact 31-37), and whom we recommended should be permanently disbarred, along with Defendants Genova and Gulotta. *Id.* at 1044-45. Gulotta's reliance on Kawanna – a witness whose credibility has been so severely damaged – offends this Court's judicial sensibilities.

Finally, the official misconduct charges in Gulotta's case – unlike in Genova's case – are sufficient to support valid RICO predicate acts. The instant opinion acquits Genova for his violation of 720 ILCS 5/33-3(c) of the Illinois official misconduct statute. *See supra* Part I(A). Our prior opinion, on the other hand, convicted Gulotta under 720 ILCS 5/33-3(d), which the Seventh Circuit has clearly held "could be generically defined as bribery [and] can be the basis for a predicate act." *Garner*, 837 F.2d at 1418. We reaffirm that conviction now. Thus, we easily reject five of Gulotta's original seven arguments as to Count One.

racketeering activity" as requiring at least two acts of racketeering committed in a ten-year period. 18 U.S.C. § 1961(1). *See also Sedima*, 473 U.S. at 496 n.14. In addition, the Government must show that the predicate acts of racketeering by Defendants are related and that they amount to or pose a threat of continuing criminal activity. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). *See also Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 962-63 (7th 1996) (a determination as to whether a "pattern of racketeering activity" exists in any given situation is a fact-specific question hinging on a variety of factors including: (1) the number and variety of the predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries) (citation omitted). RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4). *See Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990) (an enterprise requires "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making.").

In this case, both the jury and the Court properly found that the required "pattern" was "repeatedly established by the multiple [and varied] predicate racketeering acts of mail fraud, bribery and official misconduct committed by Genova and Gulotta over the course of a substantial period of time in excess of three years and within a ten-year period." *Genova*, 167 F. Supp. 2d at 1041-42. *Cf. Vicom Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 782-84 (7th Cir. 1994) (no close-ended continuity where solely acts of mail and wire fraud took place over a time span of less than nine months); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 663

(7th Cir. 1992) (no pattern where solely acts of mail fraud resulted in nondistinct injuries); *Jones v. Lampe*, 845 F.2d 755, 757-59 (7th Cir. 1988) (no pattern in civil RICO case where there was only one major transaction with one distinct injury); *Lipin Enters. Inc. v. Lee*, 803 F.2d 322, 324-25 (7th Cir. 1986) (Cudahy, J., concurring) (holding that there was no pattern where allegations contained just one instance of fraud with a single victim and stating that "[m]ail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts . . . does not necessarily translate into a 'pattern' of racketeering activity"). Furthermore, Defendants' illegal attorney fees kickback scheme perpetrated a fraud upon and caused multiple and distinct injuries to the public good and financial well-being of Calumet City and its approximately 40,000 citizens. Therefore, we find that the evidence established a pattern of RICO activity as charged in Count One.

Finally, in this case we held that "Calumet City was used as an enterprise by Genova and Gulotta to conduct illegal activities." *Genova*, 167 F. Supp. 2d at 1041. We based this holding on *United States v. Lee Stoller Enters., Inc.*, 652 F.2d 1313 (7th Cir. 1981), which stated that "Congress opted for a far broader definition of the word 'enterprise'" in finding that the Madison County Sheriff's Office, like other public entities, was a proper RICO enterprise. *Id.* at 1318-19. *See also Pelfresne v. Vill. of Rosemont*, 22 F. Supp. 2d 756, 761-62 (N.D. Ill. 1998) (Gettleman, J.) (holding that the Office of the Mayor and defendants associated therewith qualifies as an association in fact); G. Robert Blakey and Kevin P. Roddy, *Reflections on Reves v. Ernst & Young: Its Meaning and Impact on Substantive, Accessory, Aiding Abetting and Conspiracy Liability under RICO*, 33 Am. Crim. L. Rev. 1345, 1479-80 (1996) (collecting cases where governmental offices and organizations were held to constitute RICO enterprises). Gulotta's

claims to the contrary are unavailing, and we again conclude that the evidence "overwhelmingly established" Gulotta's guilt with respect to the RICO violations charged in Count One of the Indictment.[16]

## III. Stack's Motions for a Judgment of Acquittal and for a New Trial

On August 27, 2001, the jury returned a verdict finding Defendant Stack guilty of racketeering, as charged in Count One of the Indictment. In particular, the jury's itemized verdict found that Stack had committed the following racketeering acts: 9(a) (official misconduct – Paul Kowalchyk); 9(b) (bribery – Paul Kowalchyk); 10(a) (official misconduct – Nick Yovkovich); 10(b) (bribery – Nick Yovkovich); 12(a) (official misconduct – Tom Maszinski); 12(b) (bribery – Tom Maszinski); 13(a) (official misconduct – Anthony Perry); 13(b) (bribery – Anthony Perry). Stack was also convicted of the two theft of funds charges alleged in Counts Five and Six.

In his motion for a judgment of acquittal, Stack makes the following arguments: (1) he should be acquitted on Count One because the Government failed to prove each and every

---

[16] Gulotta also argues that the evidence is insufficient to establish his guilt as to Count One because the record does not establish that he "participated in the operation or management" of the RICO enterprise (*i.e.* Calumet City). (R. 163-1, Gulotta's Version (citing *Swan*, 250 F.3d at 499 (stating that "simply performing services for an enterprise . . . is not enough to subject an individual to RICO liability under § 1962(c)") (quotation omitted)).) The Supreme Court found that "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs. . . . An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Reves v. Ernst & Young*, 507 U.S. 170, 177-85 (1993); *Gio v. United States*, 969 F. Supp. 512, 514 (N.D. Ill. 1997) (Alesia, J.) (holding that a lower rung participant in a RICO enterprise, who knowingly implemented the decisions of upper management, is liable under § 1962(c)). In the instant case, Gulotta – the City Prosecutor of Calumet City – was much more than a lower rung participant simply performing services for the RICO enterprise. Rather, he and Genova – the Mayor of Calumet City – jointly managed their illegal attorney fees kickback scheme. Therefore, we conclude that under *Reves* and *Swan*, Gulotta "participated in the operation or management" of the Calumet City RICO enterprise.

element of the Illinois official misconduct and bribery charges in racketeering acts 9, 10, 12 and 13; (2) he should be acquitted on Count One because racketeering acts 12 and 13 do not comprise a "pattern of racketeering activity" as a matter of law; and (3) he should be acquitted on Counts Five and Six because the Government failed to prove that the thing embezzled, stolen, obtained by fraud, unlawfully converted or intentionally misapplied over a one year period as to Stack was "valued at $5,000 or more." In his motion for a new trial, Stack maintains that this Court should order a new trial because: (1) there is a reasonable possibility that the introduction of a dictionary definition of the term bribe into the jury's deliberations had a prejudicial impact on him; (2) he suffered prejudice as a result of the Court's denial of his pretrial motions to dismiss Counts Five, Six and Seven, as well as his requests for severance, because nothing connected Stack to the attorney fees kickback scheme alleged in the RICO and mail fraud counts; (3) the Court erred in allowing the official misconduct charges to go to the jury in the form of RICO predicate acts because the conduct at issue in the RICO count as to Stack resembled theft (which is not a RICO predicate act), as opposed to bribery; and (4) the Court erred in its jury instructions, including giving the ostrich instruction as to Stack (Government Instruction 14) as opposed to Stack's proposed knowledge instruction (Defendant Stack's Instruction 8A), instructing the jury that official misconduct is a form of bribery under Illinois law (Government Instruction 30a), and refusing to give Defendant's Instruction 19, which dealt with the definition of the "pattern of racketeering activity" element.

In its consolidated response, with respect to Stack's motion for a judgment of acquittal, the Government argues that: (1) viewing the evidence in the light most favorable to the prosecution, there was ample evidence for a reasonable jury to conclude that Stack violated the

Illinois official misconduct and bribery statutes – as charged in racketeering acts 9, 10, 12 and 13 – when he used Calumet City tax dollars in the form of illegal pay and comp time to induce and bribe city workers to perform purely political activity for Genova and his political allies; (2) when all four of Stack's racketeering act convictions are considered, it is clear that there is the necessary "duration" of illegal conduct to form a RICO "pattern"; and (3) the jury could have reasonably concluded that Stack improperly converted at least $5,000 in Calumet City funds in the form of comp time in 1996 and 1997, in violation of Counts Five and Six of the Indictment. Also in its consolidated response, with respect to Stack's motion for a new trial, the Government argues that: (1) as in the case of Defendant Genova, an objective assessment of the proceedings demonstrates that the bribery verdicts as to Stack were not affected by outside information and, therefore, he is not entitled to a new trial on racketeering acts 9(b), 10(b), 12(b) and 13(b); (2) Stack's severance and motion to dismiss Counts Five and Six arguments were already properly denied by the Court, and the fact that the jury acquitted Stack of all but four predicate acts in the RICO count is irrelevant because the jury could have reasonably concluded that Stack improperly converted at least $5,000 in Calumet City funds in the form of comp time in 1996 and 1997; (3) official misconduct is a separate form of bribery under Illinois law and, therefore, the Court did not err in allowing the official misconduct charges to go to the jury in the form of RICO predicate acts; and (4) the Court's instructions as to the RICO counts were correct statements of the law and did not have a prejudicial impact on Stack.[17]

---

[17] The Court has already addressed and rejected Stack's arguments that: (1) the introduction of the extraneous dictionary definition of "bribe" prejudiced Defendants and entitled Stack to a new trial on racketeering acts 9(b), 10(b), 12(b) and 13(b); (2) the Court erred in allowing the official misconduct charges against Stack in Count One (racketeering acts 9(a), 10(a), 12(a) and 13(a)) to go to the jury in the form of RICO predicate acts; and (3) the Court

## A. Count One

The Indictment charged in racketeering act 12(b) that Stack bribed Thomas Maszinski, a Calumet City Public Works employee, by offering him comp time in return for his political work for Mike Gilio. *See* Indictment Count One (Sub-Act 12(b)). The Indictment also charged in racketeering act 13(b) that Stack bribed Anthony Perry, a Calumet City Animal Control officer, with comp time in return for his political work for Defendant Genova. *See id.* (Sub-Act 13(b)). Stack argues that the guilty findings as to racketeering acts 12(b) and 13(b) should be vacated because the Government failed to prove the essential elements of bribery under Illinois law. Specifically, Stack contends that, with respect to racketeering act 12(b), the Government failed to prove bribery because there was no evidence of any "prior understanding" between Stack and Maszinski, and Maszinski was "authorized by law to accept" the comp time. Similarly, with respect to racketeering act 13(b), Stack maintains that the Government failed to prove that Perry accepted any compensation that he was "not authorized by law to accept."[18]

Viewing the evidence in the light most favorable to the Government in racketeering act 12(b), however, there was ample evidence for a reasonable jury to conclude that Stack intended to influence the performance of Maszinski's employment based on Stack's prior practice of

erred in its jury instructions. *See supra* Part I(A (n.3-4), D).

[18] Stack also argues that vacatur of the bribery charges in racketeering acts 9(b), 10(b), 12(b), and 13(b) mandates vacatur of the official misconduct charges in those acts (9(a), 10(a), 12(a) and 13(a)). We disagree. As this Court instructed the jury in Government Instruction 30(a), pursuant to the Seventh Circuit's holding in *Garner*, 837 F.2d at 1418, "Official Misconduct is a separate form of bribery under Illinois law." More importantly, we find that the jury properly convicted Stack of the bribery charges, so the underlying basis of his motion for acquittal on the official misconduct charges in untenable.

awarding city pay and comp time to his Public Works employees for their political activity performed during and after normal work hours. The testimony of numerous Public Works employees, supported by extensive documentation, established that shortly after becoming Commissioner of Public Works in 1994, Stack routinely began awarding comp time and city compensation to his employees who performed political work for Genova and his political allies. In light of this evidence, a reasonable jury was entitled to conclude that there was a "prior understanding" between Stack and Maszinski that Stack would award Maszinski with comp time for Maszinski's political work on behalf of Gilio both during and after normal work hours.

Moreover, as to racketeering act 13(b), Perry testified that the employee who previously worked Animal Control for Calumet City on the weekend never received any extra city pay, and that Perry received substantial city compensation for the weekend work that he performed, usually eight or sixteen hours worth of comp time for each Saturday or Sunday worked. Under these circumstances and viewing the evidence in the light most favorable to the Government, the jury was entitled to conclude that the twenty-three comp days Stack awarded to Perry was in exchange for Perry's political phone calls made on behalf of Genova's race for Illinois Treasurer, and that this was an unauthorized and illegal use of city monies. *See* 720 ILCS 5/33-1.

Finally, the jury flatly rejected Stack's contention that he had unfettered discretion in awarding comp time to his Public Works employees and that these employees were generally entitled to receive comp time. In finding Stack guilty of the RICO counts, the jury reasonably concluded that using city tax dollars to induce and bribe city workers to perform purely political activity for Genova and his political allies was an unauthorized and illegal use of city comp time and resources. *See id.* Accordingly, Stack's motion for a judgment of acquittal on racketeering

acts 12 and 13 is denied.[19]

## B. Count Five and Six

In Counts Five and Six, the Indictment charged and the jury convicted Stack of violating

18 U.S.C. § 666 for "steal[ing], and obtain[ing] by fraud, and . . . knowingly convert[ing]"

Calumet City funds in the amount of at least $5,000 in 1996 and 1997, respectively. *See*

Indictment Counts Five and Six. Stack argues that "[e]ven accepting the evidence in a light most

favorable to the government, the government did not prove that the value of the stolen funds as to

Stack exceeded $5,000 over the calendar years at issue." (R. 147, Stack's Mot. for J. of Acquittal

at 9-10.) In particular, Stack maintains that the jury only found that Stack committed four

racketeering acts, *i.e.* bribery and official misconduct with respect to Paul Kowalchyk, Nick

Yovkovich, Tom Maszinski and Anthony Perry, and that looking to those predicate acts alone,

the value of the comp time or city pay during 1996 and 1997 did not exceed $5,000 for either

year. Therefore, Stack asks this Court to enter a judgment of acquittal on Counts Five and Six.[20]

---

[19] Likewise, the Government proved the essential elements of bribery under Illinois law in racketeering acts 9(a) (official misconduct – Paul Kowalchyk), 9(b) (bribery – Paul Kowalchyk), 10(a) (official misconduct – Nick Yovkovich) and 10(b) (bribery – Nick Yovkovich). Given these holdings and our earlier analysis of RICO's "pattern" requirement, *see supra* Part II(A), we conclude that when all four of Stack's racketeering acts (9(a), 9(b), 10(a), 10(b), 12(a), 12(b), 13(a) and 13(b)) are considered, it is clear that there is the necessary "duration" of illegal conduct to form a RICO "pattern." *See, e.g., H.J., Inc.*, 492 U.S. at 239-42. Therefore, we conclude that Stack is not entitled to a judgment of acquittal on racketeering acts 9 and 10.

[20] Stack also contends that he is entitled to a new trial on Counts Five and Six because the Court erred in denying his pretrial motion to dismiss these counts, as well as his requests for severance. Specifically, Stack claims that: (1) joinder was improper because the proof did not establish that he was a member of a "single overarching conspiracy delineated in the RICO count," since nothing connected him to the attorney fees kickback scheme, mail fraud charges or acts of intimidation by Genova; (2) joinder was improper because of spillover considerations with the attorney fees kickback scheme and because Counts Five and Six were duplicitous. These arguments are substantively identical to the ones that Stack raised in his pretrial motions

27

In Stack's case, as opposed to Genova and Gulotta's case, *see supra* Part I(C) and Part II(n.14), the evidence was not sufficient for a reasonable jury to conclude that Stack improperly converted at least $5,000 in Calumet City funds in the form of comp time in 1996 and 1997. This Court expressly held and the jury found that Genova and Gulotta's attorney fees kickback scheme wrongfully converted approximately $38,725 and $5,150 in Calumet City funds in 1996 and 1997, respectively, thereby satisfying the minimum jurisdictional amount of § 666. *See Genova*, 167 F. Supp. 2d at 1034 (Findings of Fact 48, 49, 53). In Stack's case, however, despite the Government's contention that "[t]he jury heard and saw overwhelming evidence that defendant Stack organized scores of political blitzes in 1996 and 1997 and then improperly converted city funds (far exceeding $5,000 in each year) in the form of comp time to bribe/pay-off his Public Works employees for this political work," (R. 152, Gov.'s Consol. Resp. at 18-19), the jury found that Stack committed only four racketeering acts involving Paul Kowalchyk, Nick Yovkovich, Tom Maszinski and Anthony Perry.

Our examination of the record indicates that, even when viewing the evidence in the light most favorable to the Government, Stack's award of comp days to these four Public Works employees in violation of racketeering acts 9, 10, 12 and 13 did not exceed $5,000 in 1996 and 1997. As such, we reject the Government's claim that "[t]he fact that the jury acquitted defendant Stack of all but four predicate acts in the RICO count is irrelevant," (*id.* at 19), because we do not believe that a reasonable jury could have found the requisite jurisdictional amount of § 666 for either year beyond a reasonable doubt. Consequently, this Court enters a judgment of

---

and that we have already rejected. Thus, Stack has provided no new reasons for this Court to reconsider its prior rulings, and we therefore deny Stack's motion for a new trial on Counts Five and Six.

acquittal as to Stack on Counts Five and Six.

## CONCLUSION

For the foregoing reasons, Defendant Jerome P. Genova's motion for a judgment of acquittal on Counts Five and Six, racketeering acts 1(b), 3(b), 4(b) and 18(a) and for a new trial is granted in part and denied in part, (R. 145), Defendant Lawrence P. Gulotta's motion for a judgment of acquittal and/or for a new trial is denied in its entirety, (R. 146), Defendant Jerome J. Stack's motion for a judgment of acquittal notwithstanding the verdict is granted in part and denied in part, (R. 147), and Stack's motion for a new trial is denied, (R. 148). Genova is set for sentencing on March 13, 2002 at 1:00 p.m., Gulotta is set for sentencing on March 6, 2002 at 1:00 p.m. and Stack is set for sentencing on March 7, 2002 at 1:00 p.m.

**ENTERED:**

**Judge Ruben Castillo**
**United States District Court**

**Dated: February 13, 2002**